Mary W. Anderson, Appellee, v. James A. Williams, Appellant.
Sarah E. Blood, Appellee, v. James A. Williams, Appellant.

### Gen. No. 5,729.

1. WILLS—*active trust during lifetime enforcible.* On a bill to have a will devising real estate in trust construed, the trust terminated, and the trust fund turned over as absolute property, *held,* that the will conveys the title to real estate and proceeds therefrom

under an active trust, in full force and effect, the income there-from going to complainants during their natural life, and that the question as to the disposition of such funds after their death is premature.

2. WILLS—*active trust for life enforced.* Even though there may be a question as to a limitation over to children of devisees, still, a devise in an active trust for such devisees for life is good and valid, regardless of where the fund goes after their death.

3. TRUSTS—*cannot be dis-established.* Neither a trustee nor a beneficiary, either acting together or separately, have power to dis-establish an existing trust.

4. WILLS—*release of contingent interest.* Where a trustee under a will at a meeting of the heirs, in which they agreed that their respective shares should be distributed absolutely, stated that he would release his contingent interest, as heir, but not as trustee, in the trust fund, there being no binding assignment shown, there is nothing enforcible in law as to such release.

Appeal from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded with directions. Opinion filed March 12, 1913.

F. W. POTTER and EVANS & EVANS, for appellant.

ANDERSON & ANDREWS, for appellees.

MR. JUSTICE WHITNEY delivered the opinion of the court.

William P. Williams, father of appellees and appellant Williams, made his will on December 31, 1900, and on December 2, 1901, made a codicil thereto. On February 26, 1907, he died, leaving no widow but leaving appellant James A. Williams, his son; appellee Mary W. Anderson, his daughter; appellee Sarah E. Blood, his daughter, and his daughters Catherine Esmond, Annette Wylie and Carrie Patty as his heirs and only heirs at law, all of full age of legal majority. In May, 1907, said will and codicil were duly probated in the County Court of Marshall county, state of Illinois, wherein the same are of record as the valid and subsisting last will and testament of said William P. Williams, deceased. On the tenth day of January,

1910, more than one year after the probate of said will and codicil, appellee Mary W. Anderson filed her bill in this cause, not to contest said will and codicil, but to have the same construed, the trust therein mentioned terminated, and the trust funds therein provided for her benefit, turned over to her as her absolute property. On said tenth day of January, 1910, appellee Sarah E. Blood filed her bill in this cause for the same purpose. For brevity hereinafter Mary W. Anderson and Sarah E. Blood will be named as they are the only appellees. Answers to both bills were filed and issues joined, and proofs taken before a master. The master reported his findings of law and fact, and thereafter, by order duly entered in the trial court, the two bills were consolidated, the bill of appellee Sarah E. Blood to be treated as a cross-bill to the bill filed by appellee Mary W. Anderson. Exceptions to the master's report were filed by both appellant and appellees, which were all overruled or withdrawn, and decree was entered by the trial court substantially according to the master's recommendation, by which the said trusts were terminated and the funds in the hands of the trustees decreed to be paid to appellees respectively, and requiring the trustees to pay six per cent. on the trust funds in their hands, although they had obtained only three per cent., appellees having claimed this money from the first.

The will and codicil, after making provisions for certain legacies, not herein involved, is as follows: Item VI. I give and devise to my son, the said James A. Williams, and to my son-in-law, Wesley D. Patty, all of my real estate, wheresoever situated, in trust, that they have the care and control thereof, that they rent the same and receive the rents, issues and profits thereof; and having first paid for all needed repairs, taxes, insurance and other lawful charges against the same, that they divide the net rents, issues and profits thereof semi-annually, among my wife and my children hereinafter named, so long as my said wife shall

live, in the proportions following, to-wit: That they pay to my wife, the said Matilda, semi-annually, one third part thereof, and that they pay one sixth part thereof semi-annually to my daughters namely: Catherine, wife of Darwin W. Esmond, Sarah Elizabeth Williams, hereinbefore called (Bessie), Annette, wife of John Wylie,. Mary W., wife of Nels F. Anderson, and Carrie, wife of Wesley. D. Patty, and to my son, the said James A. Williams, for the term aforesaid. That after the death of my wife, the said Matilda, the said James A. and Wesley D. shall sell the real estate aforesaid, in such lots and parcels, (or all en masse,) at such time and times and at such price and prices as to my said Trustees shall seem meet and to the interest of my estate, the proceeds of such sale and sales, and the net rents, issues and profits thereof accruing after the death of my said wife, I hereby. give, devise and bequeath to my beloved children, namely the said Catherine Esmond, James A. Williams, Sarah Elizabeth Williams, Annette Wylie, and Carry Patty, each an equal one sixth thereof, and the remaining one sixth thereof to the said James A. and Wesley D., in trust that they invest the same in well secured and safe bonds, notes and mortgages, yielding the largest possible interest, with entire safety to the principal, and that the net income thereof, they pay to the said Mary W. Anderson, semi-annually during the remainder of her life, and after her death, that they pay the said net income of said fund semi-annually to such child or children as the said Mary W. Anderson may leave her surviving, and to the surviving child or children of any deceased child or children of the said Mary W. as shall be living at the time of such distribution, and who shall not have arrived at his or her majority, per stirpes, and per capita. That each of the child or children of the said Mary W., and the surviving child or children of a deceased child or children of the said Mary W. being of the age of eighteen if female or twenty one if male, shall take his or her

share of both income and principal of said fund in the same proportion as of the income, which shall be in full of his or her share in said fund, and of the income thereof.

It is further my will that no child or children born after the death of the said Mary W. shall be entitled to said fund, nor any part thereof, nor of the income thereof. That in case any of said fund shall be left at any time and there be no one living who on arrival at his or her majority will be entitled to so much of said fund as then remains, that then, in that case, such remainder shall be immediately distributed between those who shall be then living and who have before then received a share of said fund, in portions proportioned as in prior distributions of said trust fund.

Item VII. It is further my will, that in case it shall seem to be to the best interest of my estate, that the said James A. and Wesley D., may sell the land owned by me in sections seventeen (17) and eight (8) being fifty acres and twenty acres respectively or such part or portion thereof, as they may deem best, and apply the net proceeds thereof first, to the payment of my just debts, and distribute the remainder, if any, according to the directions for the distribution of the sale of my real estate hereinbefore set forth the whole fund and without investment; and that the said James A. and Wesley D., have power to procure the release of my said wife, for a lump sum to be agreed upon by them and my said wife, to be paid out of the proceeds of such sale or sales. And that in case my son, the said James A., shall desire to become the purchaser of any part or portion and for the purpose of making such sale or sales and conveyances, I hereby substitute the said John Wylie, as the trustee, in the place of the said James A. with the same powers herein given to the siad James A., but for no sale or sales to any other or different person than the said James A. Williams whomsoever; the net proceeds thereof to be paid to the said James A. and Wesley D., to be held

by them upon the same trusts as in case of sales of real estate made by them.

Item VIII.   It is my will that in case my daughter Mary W. Anderson shall take the sum of five hundred dollars, or any part thereof, hereinbefore given and bequeathed to her, that she be charged with the same as so much of the principal of her interest, (and that of her descendants,) in the proceeds of my real estate, and that the same and the income thereof be diminished accordingly; but that if she shall not take said sum, nor any part thereof, in that case no diminution of her interest in the proceeds of my real estate shall be made.

Item IX.   I hereby give, devise and bequeath all the rest residue and remainder of my estate, of what kind or nature soever and wheresoever situated, to my beloved children above named, to be divided between them equally, share and share alike.

And lastly I hereby nominate and appoint the said James A. Williams and Wesley D. Patty, to be the executors of this, my last will and testament; hereby giving to them, and to the said John Wylie, full power and authority upon making any sale or sales of real estate hereinbefore authorized, good and sufficient deed and deeds or conveyance to make, acknowledge and deliver, conveying the premises sold to the purchaser or purchasers thereof; hereby revoking all former wills by me made.

In testimony whereof, I have hereunto set my hand and seal this 31st day of December A. D. 1900.

(Signed)                    WILLIAM P. WILLIAMS.

(Seal.)

CODICIL.

Whereas, I, William P. Williams of the Township of Henry, in the county of Marshall and State of Illinois, have made my last will and testament in writing bearing date of the 31st day of December A. D. 1900, in and by which I have willed and directed that one sixth part of the net rents and profits of my estate

after my death and until the death of my wife, Matilda Williams, shall be paid to my daughter Sarah Elizabeth, (called "Bessie" in the family,) and that after the death of the said Matilda, my wife, that my entire estate be converted into money, and when so converted that one sixth part thereof be paid to the said Sarah Elizabeth, who since making of said will has intermarried with Joseph R. Blood. Now therefore, I do by this writing which I hereby declare to be a codicil to my last will and testament, and to be taken as part thereof, order and declare that my will is, that the said bequest of one sixth of the said proceeds of the sale of my entire estate be, and the same is hereby revoked; and in lieu thereof, I hereby give and bequeath the said sixth of the proceeds of my entire estate in and by said will to the said Sarah Elizabeth Williams (Now Blood) given and bequeathed to my son in law, James A. Williams and Wesley D. Patty, in trust, that they invest the same in well secured and safe bonds, notes and mortgages, yielding the largest possible interest consistent with the entire safety of the principal, and that the net income thereof they pay to the said Sarah Elizabeth Blood semi-annually, during the remainder of her life; and that after her death that they pay the net income of said fund semi-annually to such child or children of the said Sarah Elizabeth as she shall leave her surviving until the youngest shall arrive at his or her majority, and as shall be living at the time of the several payments. Provided, that each child upon arriving at its majority shall be paid its proportionate share of said trust fund as it shall then be, principal and interest; and thereupon its interest in the income and profits as well as the principal of said trust fund shall then cease: That in case there shall be adult and minor children of the said Sarah Elizabeth, and all of the minor children shall die before arriving at majority, then, in that case I give and bequeath to such adult child or children of . the said Sarah Elizabeth, as shall be living at the time

of the death of the last minor sister or brother, the balance of said trust fund then remaining, and to their heirs and assigns forever: And in case the said Sarah Elizabeth shall die, leaving no child or children her surviving, or in case all of her surviving children shall die before reaching his or her majority, then, immediately after her death, or immediately after the death of the last of her surviving child, under the age of majority, I give and bequeath all of said trust fund then remaining in the hands of said trustees to such child or children of mine, (named above *i. e.*, in my will,) as shall then be living, to be divided between them share and share alike.

It is further my will that the said moneys and the several payments thereof to be paid to the said Sarah Elizabeth as aforesaid, shall be paid into her hands by said trustees in all cases, in her own proper person, and not upon written or verbal order, nor upon any assignment or transfer of the same by the said Sarah Elizabeth.

And lastly, it is my desire that this codicil be annexed to, and made a part of my last will and testament as aforesaid to all intents and purposes.

In witness whereof, I have hereunto set my hand and seal this second day of December, A. D. 1901.

WILLIAM P. WILLIAMS, (Seal)''

In this proceeding as it seems to this court, all that is before the court for determination is the legal effect of the language used in the will and in the codicil. Therefore such parts of the evidence as might have been germane if this were a bill filed within the statutory period of limitation to contest the will and codicil will not be very much considered on this hearing. All questions that go to the validity of the will and codicil are at rest. It cannot be questioned on this hearing that William P. Williams at his death left said will and codicil, the language of which speaks for itself, and which must be given effect according to the principles of law controlling such undisputed documents.

The persons named as trustees in said will must be held to have sold the real estate therein mentioned as trustees and not as executors, because by reference to the will it will be seen that as executors they were given no power of sale. They as executors were simply given full power and authority upon making sale or sales of real estate "hereinbefore authorized" to make conveyance of the real estate so sold, and the only right to sell provided for is the direction to them as trustees to sell, etc. So that said trustees held the proceeds of said real estate they sold as trustees and not as executors. The legal effect of the language of the trust clause of the will is, that if the trust provision as to appellees is entirely void, said proceeds of said real estate became and are intestate estate, the title to which is still in the heirs at law of the testator or passes to the residuary legatees named in the will. The will and codicil construed even as one instrument as appellees contend they must be, did not vest any title absolutely in fee in either of appellees. The will must stand as the will, the codicil being construed to be a part thereof. The record is barren as to anything that warrants the conclusion that the testator's intention was that if Mrs. Blood's husband died before she did, that then the trust provision for her should end, and that she could then take under the terms of the will as it was originally before the codicil was drawn. The codicil cannot now be set aside. It is the testamentary disposition of testator's property so far as it relates to Mrs. Blood.

Under the will as modified by the codicil each of appellees have the life use of one-sixth of the proceeds of testator's real estate for and during her natural life, the same to be held by appellants as trustees during that time.

We are of the opinion that regardless of where these funds go after the death of appellees respectively, the trustees as such, took the title to the proceeds of the real estate and must follow the terms of the will as to

the investment of the funds, and the payment of the income therefrom during the lives of appellees respectively, and that raising the question now by appellees as to what is to become of those funds after their death is premature, and a question this court is not bound to determine in order to pass upon the case before it. It is sufficient to reverse the decree if this court finds said trustees are such for the active purpose of loaning the funds, and paying the proceeds to appellee's during their lives. They have active duties to perform. Under the authority of Quinlan v. Wickman, 233 Ill. 39, we hold that even though there may be a question as to the validity of the limitation over to the children, etc., of appellees respectively, still the devise in trust for the use of each of appellees for life, is good and valid, and under the trust clause of the will and codicil, appellants properly hold the funds in active trust, for the use of appellees respectively, during life. Counsel for appellees say on page 35 of their argument, and it is the law: "We fully agree with counsel that neither the trustee nor the beneficiary, either acting together or separately, have power to disestablish a trust, if one exists." The most that can be said of the Princeton meeting at which it is claimed all of the heirs, including appellant Williams, agreed that appellees should have their shares absolutely, is to the effect that appellant Williams said he would not release his interest as trustee, but that he would release his interest as heir in the funds which were held in trust for the benefit of appellees. We cannot hold that the Princeton meeting amounted to anything enforceable in law as to the contingent personal interest of appellant Williams in the trust funds. So far as the assignments mentioned in the evidence are concerned they may or may not amount to binding assignments of the interests thereby professedly assigned of the contingent personal interests in the trust funds, but they have no legal force or effect in this case, because no assignment is shown

of the contingent personal interest of appellant Williams.

On at least three grounds we are of the opinion the decree in this case must be reversed, (1) The contingent personal interest of appellant Williams, if any he has in the trust funds, has neither been assigned or contracted to be assigned by any agreement that is enforceable in law, but it still remains in him. (2) The trust is an active trust, in full force and effect as to the two-sixths of the proceeds of the land under the trust for the benefit of appellees respectively, requiring the trustees to loan the funds and pay the proceeds to appellees during their lives. (3) The trusts have not been determined by an agreement made by and binding in law upon all of the possible beneficiaries under them. Appellees could have filed bills to compel the trustees to account for the income and enforce the provisions of the will as to the trusts, but that is not this case. They here seek to deny the existence of the trust and compel payment to each of them as an absolute property right in the funds in appellants hands.

As we view the case, there is nothing to be done but reverse the decree and remand the case with instructions to dismiss both the bill of appellee Anderson, and the bill of appellee Blood, which has been treated as a cross-bill.

*Reversed and remanded with directions.*